## BENNETT *v.* THE CITY OF BUFFALO.

The power conferred by the charter of Buffalo upon the city comptroller and common council, to make out an accurate description of land returned for the non-payment of taxes or assessments so imperfectly described that the same cannot be located with certainty, and to make out a new tax-roll therefor, does not authorize the insertion in such new roll of the name of another person as owner of the land than the person so named in the original roll.

A tax or assessment cannot thus be made a personal charge without giving to the person upon whom it is sought to be imposed, the notice and opportunity to apply for correction secured by statute to persons named in original assessment rolls.

APPEAL from a judgment of the Supreme Court. The action was in the nature of trespass, for taking and carrying away a quantity of bank notes, the property of the plaintiff, of the value of $4,824.65. The defendant justified the taking of the notes, by a collector of taxes of the city, for the non-payment of an assessment for benefit against the real estate of the plaintiff, which, as the defendant contended, was a charge upon the plaintiff personally. The assessment was for the expense of constructing a ship canal, and was made

by virtue of the act consolidating and amending the prior acts respecting the city of Buffalo, passed April 17, 1843, (*Sess. Laws*, 116), as further amended by several subsequent acts. The case was tried by Mr. Justice BOWEN, without a jury. The taking of the bills by the collector was proved. It appeared by the defendant's evidence that after appropriating land for the canal, an assessment was made out and signed by the assessors, who had been appointed by the common council to assess the expense of constructing the improvement, and that the same was filed in the office of the city clerk on the 6th day of March, 1850. By this roll, among other lands, sundry parts of outer lots numbers forty-seven, forty-eight and forty-nine were assessed for various sums, amounting to $5,260.33. Against each of these parcels of land the name "Whitney" was written in the column of persons' names. The roll was duly confirmed by the common council, and after remaining in the treasurer's hands thirty days to enable the parties assessed to pay voluntarily, it was delivered to a collector of taxes, with a warrant annexed according to the provisions of the statute. After being once renewed, it was finally returned by the collector, with the assessment upon the parcels of land above mentioned unpaid. The defendant gave in evidence a report made by Mr. Cadwalader, the comptroller of the city, annexed to a schedule of lots and parts of lots, and which was therein stated to be a description of lands returned by Israel Gillett, collector of taxes and assessments for the city of Buffalo, for non-payment of assessments levied for the purpose of defraying the expense of constructing the ship canal above mentioned, "the location of which was imperfect in the original assessment roll." The comptroller certified that the description in his schedule was a correct description of the parcels of land mentioned in it, and that the same were so imperfectly described in the original roll that they could not be located with certainty. The schedule embraced the parcels of land in outer lots numbers forty-seven, forty-eight

Bennett *v.* The City of Buffalo.

and forty-nine, against which the name "Whitney" was written in the original roll, with the word "northerly" substituted for "southerly" in a part of the description. The defendant then gave in evidence certain proceedings of the common council, by which the report above mentioned was accepted and adopted, and the comptroller. was directed to make the necessary corrections in the descriptions of land in the said assessment roll. The comptroller thereupon made out a new assessment roll of the several lots and parts of lots so stated to have been returned by the collector for imperfect descriptions. This roll, as to the parcels of land assessed to Whitney, was identical with the original roll, except that the description was corrected in the manner stated in the comptroller's report, and except that the name of "Philander Bennett," the plaintiff, was written in the column of persons' names instead of "Whitney," and except also that the interest on the tax was added to the former amount. It was properly certified by the comptroller. This new roll was confirmed by the common council March 8, 1852, and after remaining with the treasurer thirty days as required by law, was placed in the hands of Miller, a collector of taxes, who seized the plaintiff's bank notes for the assessment on the lots mentioned. The defendant proved that on the 5th November, 1849, William Whitney and his wife conveyed to the plaintiff an undivided eighth part of lots numbers forty-seven, forty-eight and forty-nine.

The plaintiff's counsel, among other points, insisted that the common council, under the power to correct the description of land imperfectly described, could not insert in the new assessment roll a different name from the one contained in the former roll, as the owner of the land and the party to be personally assessed, and that having done so in this instance, the proceeding was illegal and inoperative upon the plaintiff. The judge decided that the plaintiff had established a cause of action, and that the defendant's evidence did not make out a defence. The defendant's counsel

excepted. Finally, the judge directed a judgment for the value of the bank notes, and the defendant excepted. The court, at general term in the eighth district, affirmed the judgment. The defendant appealed to this court.

*Nicholas Hill*, for the appellant.

*A. P. Laning* and *Solomon G. Haven*, for the respondent.

JOHNSON, Ch. J. The question of the liability of the corporation, if the warrant on which the plaintiff's property was taken, was not authorized by law, we regard as settled in favor of the plaintiff by the adjudications in this court. (*Conrad* v. *Ithaca*, 16 *N. Y.*, 158; *Weet* .v. *Brockport*, *id.*, 161, *in note; Howell* v. *Buffalo*, 15 *id.*, 512). In the last case cited, an error occurs in the report which should be corrected. Judge COMSTOCK agreed with the majority of the court on the original question, as to the responsibility of the corporation for the wrongful acts of its officers, and dissented from the judgment only on the ground that the demand ought to have been presented to the common council for audit or allowance before suit brought.

Upon the original assessment roll, the name of the plaintiff does not appear, and on that roll, therefore, no warrant could have been lawfully issued against his personal property. The question therefore is, whether any authority existed by law in virtue of which, a personal responsibility has been subsequently imposed upon the plaintiff.

Section 21 of chapter 166 (*Laws of* 1849, *p.* 228), provides for cases where by mistake or otherwise, lands have been omitted and not taxed or assessed, nor included in the roll for such tax or assessment. In such cases, if the omission or mistake have occurred in an assessment for local improvements, the common council have power to direct any city officer to correct the error by amending the roll, or making a further assessment, and including therein the lands so omitted.

Bennett *v.* The City of Buffalo.

In the case before us, the land was not omitted, but was imperfectly described, so that in the opinion of the city comptroller, it could not be located with certainty. Nor were the further proceedings in the assessment based upon the statutory provision just stated. They were plainly founded on section 3 of chapter 101 (*Laws of* 1848, *p.* 117,) which provides for the case of lands so imperfectly described that they cannot, in the opinion of the comptroller, be located with certainty. In that case, he has power to make out an accurate description of such lands, with the amount of the tax or assessment, and the interest thereon; and to report the same to the common council, and they thereupon have power to order a new tax roll to be made out for the same, which (the act says,) shall be filed and become a lien on such lands, and the same shall be collected in the same manner as original rolls are collected and enforced.

With these provisions a compliance was had; but it will be observed that the only defect which can give occasion for the exercise of the power is a defective description of the lands, and even if the power of amendment were conferred in larger words than those employed, the probable construction would not extend them beyond correcting the defect. An error in the name of the party alone would make no case for the correction of the assessment, nor would it be a just construction to hold that the coexistence of such an error with one on which the power of amendment is made to depend, enlarges the power of amendment beyond the precise error the existence of which brings it into action. The statute says the new assessment shall become a lien on the lands and shall be collected as original rolls are collected. No original roll can be collected by a levy on the personal property of a party not named, and we are therefore brought back to the question of authority to insert a new name. The statute does not in terms confer it. If it should be implied, the party would be cut off from those modes of

correction and that advantage of notice which the statutes give to parties named in original assessment rolls. Such an implication of power is not reconcilable with the just construction of the statute, as has already been shown.

We are therefore compelled to say that the power has not been conferred, and that there was no legal authority for inserting in the roll the name of the plaintiff.

COMSTOCK, SELDEN, STRONG and HARRIS, Js., concurred in this opinion.

DENIO, J. (dissenting.) It was conceded on the argument that an assessment if properly made would contain a personal charge against the individual named on the roll as owner of the land, as well as a lien upon the land itself This is undoubtedly so though it requires some care to find the authority to make the personal charge. The statute declares that the common council shall have power to cause the expenses of such an improvement as this " to be assessed upon the real estate in said city deemed benefited by such improvement in proportion to the benefits resulting thereto as nearly as may be." For this purpose the common council is to appoint assessors, who are to "make an assessment roll, briefly describing the land on which any assessment is made, and assess the amount fixed by the council upon the property benefited as equitably as they can." The assessment when completed is, if approved, to be confirmed by the council. (*Laws of* 1849, *p.* 229, § 11.) Thus far the proceeding would seem to be against the land only. Then it is provided that all local taxes and assessments imposed by the common council shall be liens on the real estate on which they are assessed, and that the same proceedings shall be had for the collection and accounting for these taxes and assessments as are provided for the collection of and accounting for the general annual tax. (*Act of* 1843, *tit.* 5, § 8, *p.* 135.) By referring to the enactments respecting the annual

tax, we find that the assessment roll is to be delivered to the collector, with the warrant thereunto annexed commanding him to levy and collect the several sums in the roll specified against the persons or property therein mentioned or described and remaining unpaid, in the manner provided by law for the collection and levying of county taxes by town collectors; and it is further declared that the collector shall have and possess all the power and authority conferred by law on the collectors of county taxes. ( *Laws of* 1849, *p.* 227, § 7, *amending* § 4, *of tit. 5, of the act of* 1843.) Again by section six of title five of the act of 1843 all taxes and assessments remaining unpaid for three months may be recovered with interest against any person liable therefor. This clearly contemplates a personal liability in addition to the lien upon the land. The general tax law for county taxes, as is well known, requires the names of the taxable inhabitants to be set down in the first column of the roll; then the warrant authorizes the collection of the tax of the persons named in the roll by distress and sale. ( 1 *R. S.*, 390, § 9, 396, § 37.) From these different provisions I collect that, in making assessments for local improvements in Buffalo, as the law stood when this transaction took place, the roll should contain the name of the owner of the land assessed, and that the tax is a personal demand against him, which may be enforced by levy and sale of his personal property. This leads us to the question which was warmly disputed on the argument, namely, whether the common council, in making the new roll, which had become necessary in consequence of the imperfect description of the lots in question on the roll made by the assessors, could insert the name of a person as owner different from the one inserted in the assessors' roll. In effect the common council did insert the name of the plaintiff instead of the name of Whitney, which was on the former roll, and the consequence of such change if legal is that the plaintiff was made personally chargeable with this assessment. It is argued by the plaintiff's counsel that the

only circumstance which gave the common council jurisdiction to make a new roll was that these lots were not properly described. The change then it is argued should be such only as the exigency required, that is to say, the rectification of the description. Under color of such a power, the council, it is insisted, had no right to change the former roll in a matter in which it was in all respects regular. The authority of the council, it is said, is limited to correcting the description. The language of the statute, however, is that the council in such cases has power to order "a new roll to be made out." This new roll is to be filed and "to *become* a lien on such lands," and the money mentioned in it is to be collected in the same manner as original rolls are collected and inforced. (*Laws of* 1848, *p.* 117, § 26.) It is not a mere correction of the former roll as to the description of the land that is authorized to be made, but a new roll. The lien created by the assessors' roll is not continued, but a fresh lien is established. The new roll is itself to become a lien. This substituted lien takes date from the time the roll is filed or confirmed, and only from that time. In the meantime, changes in ownership may have taken place, and the person named as owner when the assessors' roll was prepared may not be the owner when the new one is made out. But there is no authority, express or implied, to insert the name of a person in the roll who is not the owner of the land assessed. The party personally liable is the one who owns the land when the lien is created. It would be incongruous to make a personal charge against one person while you annex a lien to the land of another for the same burthen. There is no cause for making the personal charge, except that the person upon whom it is made is the owner of land benefited by the improvement; when such a person is found a lien is imposed upon his land, and in order to afford an additional remedy for its collection he is made personally liable for its payment. In my opinion, the intention of the legislature in allowing the common council to

make a new roll in the case of imperfect descriptions of land was, in the first place, to make the description certain and then to make such other alterations as the change of circumstances occasioned by the lapse of time had rendered necessary. They are required to make a perfect roll, and to do so they must charge the individuals with the assessment whom they find to be the owners when the new roll is made.

It was not necessary for the defendant to prove that the plaintiff had become the owner of the land. If he lived in the city, and it is not asserted that he did not, the council had jurisdiction in the case, and the exercise of that jurisdiction cannot be questioned in an action of tort. The council determined, in a case within their jurisdiction, that the plaintiff as the owner of this land was personally liable for this tax. That is sufficient for their protection and for the protection of the corporation of which they were officers.

The judgment of the Supreme Court should be reversed.

Pratt and Roosevelt, Js., concurred in this opinion.

Judgment affirmed.